IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH J. BROADWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cv-628-MEF |
| | ) | (WO – Publish) |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, SHANE ANDERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants State Farm Mutual Automobile Insurance Company ("State Farm") and Shane Anderson's ("Anderson") (collectively "Defendants") Notice of Removal (Doc. #1), State Farm's Motion to Dismiss (Doc. #4), Anderson's Motion to Dismiss (Doc. #5), Plaintiff Joseph Broadway's ("Broadway") Motion to Remand (Doc. #7), and Defendants' Motion to Strike (construing Doc. #13 as containing a motion to strike). After careful consideration of the law, the evidence and arguments presented, and the record as a whole, the Court finds that Defendants' Motions to Dismiss Broadway's fraud claim are due to be GRANTED, Broadway's Motion to Remand is due to be DENIED, and State Farm's Motion to Dismiss Counts I and II of Broadway's complaint is due to be DENIED.

## I. FACTUAL AND PROCEDURAL HISTORY

This is a lawsuit by Broadway against State Farm for failure to pay Underinsured Motorist ("UIM") benefits and against State Farm and State Farm agent Anderson for fraud.

1

Broadway alleges in his complaint that he was in a motor vehicle accident in which Roger Channell ("Channell") negligently collided with Broadway causing numerous and severe injuries to Broadway.  Channell was insured only for the $25,000 minimal amount required by Alabama law.  Broadway subsequently obtained a release from Channell and his insurer for the full $25,000 amount of Channell's policy with State Farm's express permission.  State Farm also waived its subrogation rights as to Channell in regard to Broadway's claim for UIM benefits with State Farm.  State Farm subsequently refused to pay Broadway more than $5,000 in UIM benefits even though Broadway's policy limit was $25,000 and despite Broadway's allegation that State Farm knew "the fair and reasonable settlement value" of Broadway's claim exceeded the limits of Broadway's policy.  (Doc. #1-4, at ¶ 5.)  Based on State Farm's failure to pay the $25,000 policy limit for UIM benefits, Broadway asserts a breach of contract claim in Count I and a bad faith claim in Count II against State Farm.

Broadway also alleges fraud claims in Count III against both State Farm and Anderson.  Anderson is the agent who sold the State Farm auto insurance policy to Broadway.  Broadway alleges that Defendants committed fraud by representing to him through their advertising slogan that they would treat him like a "Good Neighbor," and that he purchased his policy based on Defendants' representation that he would be treated like a "Good Neighbor," i.e., Defendants would treat insurance claims "on a fair, reasonable and good faith basis."  (Doc. #1-4, at ¶ 15.)  Broadway seeks the remaining $20,000 UIM benefits under his policy along with interest and costs, as well as $150,000,000 in punitive damages.  (Doc. #1-4, at ¶¶ 9, 13.)

Broadway filed his suit in the Circuit Court of Montgomery County, Alabama on July 29, 2013. Broadway alleges that he is a citizen of Alabama, that State Farm is an Illinois corporation with its headquarters in Illinois, and that Anderson is an Alabama citizen. Defendants removed this action to this Court on August 30, 2013, and assert that Anderson was fraudulently joined, thus providing this Court with subject matter jurisdiction pursuant to 28 U.S.C. § 1332. State Farm and Anderson moved to dismiss with prejudice the fraud claim in Count III, and State Farm moved to dismiss the breach of contract claim in Count I and bad faith claim in Count II under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Broadway has filed a motion to remand the case back to the Circuit Court of Montgomery County, Alabama. The Court ordered briefing on all motions because whether the Court has jurisdiction over the case depends upon whether Broadway can state a cause of action for fraud against the non-diverse party, Anderson.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). As such, federal courts have the power to hear only cases that they have been authorized to hear by the Constitution or by the Congress of the United States. *See Kokkonen*, 511 U.S. at 377. One type of case that Congress has empowered federal courts

---

[1] As will be discussed below, a recent Alabama Supreme Court decision makes it unclear whether a motion to dismiss a claim for UIM benefits where liability and damages against the uninsured motorist have not been established should be made pursuant to 12(b)(1) or 12(b)(6). *See Ex parte Safeway Ins. Co. of Ala.*, ___ So. 3d ___, 2013 WL 5506557 (Ala. Oct. 4, 2013).

3

to hear are cases that have been removed by a defendant from state to federal court if the plaintiff could have brought his or her claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing defendant bears the burden of demonstrating that a district court has original jurisdiction over the subject matter of an action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Although remanding a case back to state court is the favored course of action when the existence of federal jurisdiction is not absolutely clear, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Burns*, 31 F.3d at 1095; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

## III. DISCUSSION

### A.   Fraudulent Joinder

#### 1.   Fraudulent Joinder Standard

Section 1332(a) requires that the plaintiff and defendant be "citizens of different States[.]" 28 U.S.C. §1332(a); *see also Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under [§ 1332(a)] requires 'complete diversity'–the citizenship of every plaintiff must be diverse from the citizenship of every defendant."). However, even if "on the face of the pleadings, there is a lack of complete diversity. . ., an action may nevertheless be removable if the joinder of the non-diverse party . . . [was] fraudulent." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). Indeed, "[t]he citizenship of a resident defendant fraudulently joined should not be considered by a

court for the purpose of determining diversity jurisdiction." *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996).

Fraudulent joiner is a judicially created doctrine that provides an exception to the requirement of complete diversity. Federal courts have recognized three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no real connection to the claim and the non-diverse defendant. *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. 2005).

Considering the first type of fraudulent joinder, which is the only type at issue here, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a [*reasonable*] *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (partial emphasis added). That is to say, if there is even a possibility that a state court would find that the complaint states a cause of action against the non-diverse defendant, remand is required. *See Legg*, 428 F.3d at 1325. Still, the possibility that the non-diverse defendant could be liable "must be *reasonable*, not merely theoretical," with "possible" meaning "more than such a possibility that a designated residence can be hit by a meteor tonight." *Id*. at n.5 (emphasis added).

Determining whether a resident defendant has been fraudulently joined "must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id.* at 1322 (internal quotations and

emphasis omitted).  "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Federal Rule of Civil Procedure 56]'."  *Id.* at 1322–23 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).  "Accordingly, all *contested* issues of substantive fact and any uncertainties as to the current state of the law must be resolved in the plaintiff's favor."  *Exum v. State Farm Fire and Cas. Co.*, 821 F. Supp. 2d 1285, 1290 (M.D. Ala. 2011) (citations omitted). However, "[w]hile the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment . . ., the jurisdictional inquiry must not subsume substantive determination."  *Crowe*, 113 F.3d at 1538 (internal quotations omitted).  "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's case beyond determining whether it is an arguable one under state law."  *Id.* (internal citations omitted).  However, where the non-moving party has presented unrebutted evidence in the form of an affidavit or declaration, courts must give weight to the sworn testimony rather than unsupported allegations in the complaint.  *See Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207 (N.D. Ala. 2006).

## 2.    **Fraudulent Joinder Analysis**

If there is no reasonable possibility of Broadway stating a cause of action in state court against Anderson, the non-diverse defendant, then there is diversity jurisdiction in this case.[2] The issue, then, is whether there is a reasonable possibility that an Alabama state court

---

[2] The Court finds that the amount in controversy requirement for diversity jurisdiction is satisfied because Broadway seeks $20,000 in compensatory damages plus punitive damages.  (Doc.

would recognize Broadway's fraud claim based on Anderson's (and State Farm's) advertising slogan that they treat their customers like a "Good Neighbor." Since the Court inquires into whether Broadway's fraud claim has a reasonable possibility of succeeding in state court, this complicates the analysis of Defendants' motions to dismiss the fraud claim. Ordinarily, the standard applied for a motion to dismiss in a federal court is the requirement that the factual allegations in the plaintiff's complaint be sufficient to state a plausible claim. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under Alabama law, however, a dismissal for failure to state a claim is appropriate only "when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Snider v. Morgan*, 113 So. 3d 643, 651 (Ala. 2012). The "no set of facts" pleading standard is the standard that was rejected by the United States Supreme Court in *Twombly*. 550 U.S. at 460–63. Thus, the Court must choose which standard to apply to Defendants' motions to dismiss.

A federal court sitting in diversity ordinarily applies federal procedural law and state substantive law. *Esfeld v. Costa Crociere*, *S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002). But under a fraudulent joinder analysis, the inquiry is not whether the plaintiff states a claim in accordance with federal procedural law, but whether there is a "possibility that the plaintiff

---

#1-4.) Although Broadway's request for $150,000,000 would constitute "grossly excessive" punitive damages in violation of the Fourteenth Amendment, *see BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), it does not appear to a legal certainty that Broadway's punitive damages could not meet the jurisdictional amount of $75,000. *See Register v. Rus of Auburn*, 193 F. Supp. 2d 1273, 1274–78 (M.D. Ala. 2002) (holding that only constitutionally-permissible ranges of punitive damages can be used to determine whether amount in controversy is satisfied).

would be able to establish a cause of action against the resident defendant in *state court . . .*" *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (emphasis added). Whether Broadway could establish his fraud claim in an Alabama state court requires the application of Alabama procedural law on motions to dismiss for failure to state a claim. Although the law does not appear completely settled, the Eleventh Circuit has applied Alabama law on pleading requirements in reviewing a motion to remand. *See Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1283–84 (11th Cir. 2006). This practice accords with the policy on motions to remand that "all *contested* issues of substantive fact and any uncertainties as to the current state of the law must be resolved in the plaintiff's favor." *Exum*, 821 F. Supp. 2d at 1290. Thus, the Court will apply the "no set of facts" standard to test the sufficiency of Broadway's fraud allegation. It follows that if Broadway fails to state a claim for fraud under Alabama's more liberal pleading standard, then he clearly fails to state a claim under the more stringent *Twombly/Iqbal* federal standard.

*Alabama Rule of Civil Procedure* 9(b), like its federal counterpart, requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Broadway states his fraud claim against State Farm and Anderson as follows:

> Defendants State Farm individually and through its agents, servants and employees, including Defendant Shane Anderson, advertises itself to it's [sic] customers and potential customers as a "Good Neighbor." Said advertising slogan is a major aspect of State Farm's advertising campaign to attract, obtain, and keep customers . . . Defendants State Farm and Anderson falsely represented to Plaintiff Joe Broadway . . . that it treats and

> would treat its automobile insurance customers as a "Good
> Neighbor" thereby overtly and expressly representing that it
> fairly and reasonably treats its customers with respect to their
> insurance claims on a fair, reasonable and good faith basis . . .
> ."

(Doc. #1-4, ¶ 15.)  Broadway thus bases his fraud claim on State Farm's advertising slogan,

"Like a good neighbor, State Farm is there," which allegedly induced him to purchase an

auto insurance policy through State Farm, and Defendants' allegedly unneighborly treatment

of him with respect to paying (or not paying) the limit of his UIM benefits.  To borrow a line

from Judge Carnes, "If arguments had feelings, this one would be embarrassed to be here."

*Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1308 (11th Cir. 2007).  This is

because an advertising slogan such as this is patently insufficient to state a cause of action

for fraud in Alabama.

The elements of fraud in Alabama are: (1) a misrepresentation of a material fact; (2)

made willfully to deceive, recklessly, without knowledge, or mistakenly; (3) that was

reasonably relied on by the plaintiff under the circumstances; and (4) that caused damage as

a proximate consequence.  *Allstate Ins. Co. v. Eskridge*, 823 So. 2d 1254, 1259 (Ala. 2001)

(quotation and citation omitted).  "[S]tatements of opinion amounting to nothing more than

'puffery' or predictions as to events to occur in the future are not statements concerning

material facts upon which individuals have a right to act and, therefore, will not support a

fraud claim."  *Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256, 259 (Ala.

1991).  The Court need go no further in its analysis of Broadway's fraud claim because he

can prove no set of facts in support of his claim that State Farm's "Good Neighbor" slogan

is anything other than mere opinion or puffery, and ,hence, not a statement of material fact. *See, e.g., McGowan v. Chrysler Corp*., 631 So. 2d 842, 847 (Ala. 1993) (holding car salesman's statements that car was "top of the line" and "smooth riding" were puffery and not statements of material fact); *Fincher*, 583 So. 2d at 256 (finding statements by salesman that car was a "fine car" that "would be dependable and reliable and that it would give [plaintiff] good service" were "nothing more than 'puffery'"). Defendants cite numerous district court cases in which the courts dismiss fraud claims against insurers based on advertising slogans. *See, e.g., Loubier v. Allstate Ins. Co.*, No. 3:09-cv-216, 2010 WL 1279082, at *5 (D. Conn. Mar. 30, 2010) ("[A]ny fraud claim premised on Allstate's 'good hands' advertising slogan must be dismissed."); *Sadler v. State Farm Mut. Auto. Ins. Co.*, No. C07-995Z, 2007 WL 2778257, at *4 (W.D. Wash. Sept. 20, 2007) (holding fraud claim against State Farm based on "good neighbor" slogan not adequately pled). Alabama law and persuasive precedent from other federal district courts show that the Court is in the company of many good neighbors when it comes to dismissing Broadway's fraud allegation for failure to state a claim. Accordingly, Defendants' motion to dismiss Count III of Broadway's complaint is GRANTED. Since Anderson is no longer a party to the lawsuit, complete diversity of parties exists and the amount in controversy is met. Thus, Broadway's motion to remand is DENIED.

**B.     State Farm's Motion to Dismiss**

State Farm moves to dismiss Broadway's breach of contract and bad faith claims without prejudice for lack of subject matter jurisdiction. In *Pontius v. State Farm Mutual*

*Auto Insurance Co.*, the Alabama Supreme Court stated that breach of contract and bad faith claims for UIM benefits are not ripe for adjudication until there is a determination that liability exists on the part of the uninsured/underinsured motorist and the extent of plaintiff's damages is fixed.  915 So. 2d 557, 565–66 (Ala. 2005).  Since such a suit is not ripe, courts lack subject matter jurisdiction, and courts must dismiss the action without prejudice pursuant to Rule 12(b)(1).  *Id*.  The Alabama Supreme Court reaffirmed this holding in *Ex parte Safeway Insurance Company of Alabama, Inc.*, 990 So. 2d 344 (Ala. 2008) (hereinafter "*Safeway I*").  The plaintiff seeking UIM benefits alleged that liability for the accident was uncontested and that the damages were undisputed, but the insurance company submitted an affidavit in which a claim manager stated the company needed to get the plaintiff's medical records to establish the extent of her damages.  *Id*. at 347–52.  The court held that the affidavit showed the plaintiff's damages were in dispute, which made the plaintiff's breach of contract and bad faith claims not ripe, and the court accordingly lacked subject matter jurisdiction.  *Id*. at 352–53.  Justice Murdock concurred in the result of *Safeway I,* but stated that, while the plaintiff's claim was premature on the grounds that her damages weren't settled, it was incorrect to say that the court lacked jurisdiction.  *Id*. at 353 (Murdock, J., concurring).  Rather, if a plaintiff pleads premature claims for UIM benefits, they should be subject to dismissal under 12(b)(6), or if a plaintiff has failed to produce evidence of a completed harm, they should be dismissed at summary judgment.  *Id*. at 353 n. 6.

The recent case of *Ex parte Safeway Insurance Company of Alabama, Inc.* (hereinafter "*Safeway II*"), indicates a move towards the view of Justice Murdock in *Safeway I*.  ___ So.

11

3d ___, 2013 WL 5506557 (Ala. Oct. 4, 2013). *Safeway II* involved a "phantom vehicle" that struck the plaintiff's vehicle and fled the scene.[3]  2013 WL 5506557 at *1.  The insurance company moved to dismiss for lack of subject matter jurisdiction under *Pontius* and argued that liability and damages had not been established.  *Id.*  The court rejected the insurance company's argument and held that the trial court had subject matter jurisdiction. *Id.* at *3.  The issue of whether the plaintiff stated a claim was a matter of satisfying Rule 12(b)(6) by stating the elements or satisfying Rule 56 by producing evidence of a completed harm. *Id.*  While the *Safeway II* court seemed to endorse Justice Murdock's concurrence in *Safeway I*, it noted that a "distinction between the facts in *Pontius*" and the case involving a phantom driver "complicat[ed] the application of the *Pontius* holding." *Id.* at *3 n. 2.  The court stated that all the cases *Pontius* relied on and all the cases in which *Pontius* was applied involved known drivers. *Id.*  Thus, *Safeway II* is potentially distinguishable from *Pontius* and *Safeway I*.

The question before the Court is whether the holding in *Safeway II* requires the Court to analyze State Farm's motion to dismiss under Rule 12(b)(1) or 12(b)(6).  The Court concludes that the *Safeway II* court intended to distinguish that case from *Pontius* and *Safeway I* on the grounds that *Safeway II* involved a phantom driver. *See Safeway II*, 2013 WL 5506557 at *3 n. 3 ("A distinction between the facts in *Pontius* and the facts before us

---

[3] Under Alabama law, unknown phantom drivers are included within the definition of an uninsured motorist. *See Walker v. GuideOne Specialty Mut. Ins. Co.*, 834 So. 2d 769, 772 (Ala. 2002).

complicates the application of the *Pontius* holding here: The present case allegedly involves a phantom driver, whereas *Pontius* involved a *known* driver . . . Safeway has not cited, and we have not found, any controlling decisions that apply *Pontius* to cases involving phantom drivers."). If the Alabama Supreme Court had intended to change the holdings of *Pontius* and *Safeway I* that courts lack subject matter jurisdiction over breach of contract and bad faith claims involving UIM benefits where liability and damages are not established, then the *Safeway II* court would have overruled those cases. *See Andersen v. Omni Ins. Co.*, No. 1:13-cv-2163, 2014 WL 838811 (N.D. Ala. Mar. 4, 2014) (concluding that *Safeway II* was distinguishable from *Pontius* and *Safeway I* and applying Rule 12(b)(1) to a motion to dismiss for failure to pay UIM benefits where the UIM driver was known). Accordingly, the Court will analyze State Farm's motion to dismiss Broadway's claims pursuant to Rule 12(b)(1).

### 1.    Rule 12(b)(1)

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion. *Id*. at 1529 (quotation and citation omitted). Factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* (quotation and citation omitted). Here, State Farm mounts a facial attack

13

when it argues that Broadway has not alleged a basis of subject matter jurisdiction because "Plaintiff's Complaint demonstrates on its face that the extent of Plaintiff's alleged damages remain uncertain." (Doc. #4, at 5.) If Broadway does not plausibly allege that his damages are certain, then his UIM claims are not ripe and the Court lacks subject matter jurisdiction. State Farm does not mount a factual attack by, for example, submitting affidavits to prove that the extent of Broadway's damages is uncertain.

The Court finds that, taking the allegations of the complaint as true, Broadway's complaint does allege that the underinsured driver was liable for Broadway's damages and that Broadway's damages are settled. State Farm does not dispute that Broadway has alleged liability on the part of the underinsured third-party driver, and the Court finds adequate allegations of liability in the complaint. (Doc. #1-4, at ¶¶ 3, 5.) Broadway alleges a litany of specific injuries in Paragraph 3 of the complaint. Broadway also alleges that "State Farm subsequently refused to pay Plaintiff any more than $5,000.00 for his underinsured motorist claim *knowing that the fair and reasonable settlement value of his claim exceeded the amount of underinsured motorist coverage available to Plaintiff*–$25,000.00." (Doc. #1-4, at ¶ 5) (emphasis added). Broadway alleges that he suffered specified injuries from the negligence of the underinsured motorist that resulted in injuries in excess of his $25,000 UIM coverage, and that State Farm paid him only $5,000 "knowing that the fair and reasonable settlement value of his claim exceeded" the limits of Broadway's policy. (Doc. #1-4, at ¶ 5.) Paragraph 5 is sufficient, at the pleading stage, to allege Broadway presented evidence to State Farm of injuries exceeding the $25,000 limit of his policy.

State Farm appears to argue that, because the face of Broadway's complaint reveals there was a dispute between Broadway and State Farm about the extent of Broadway's injuries, the extent of Broadway's damages is uncertain and, therefore, his UIM claims are not ripe. State Farm misinterprets what it means for damages to be "disputed" or "uncertain" at the pleading stage. The plaintiff must simply allege that his damages are undisputed, not that his insurer actually *agrees* to the amount in question. As State Farm would have it, every insurance company could prevent a UIM benefits claim from becoming ripe by simply disagreeing with the plaintiff's claimed damages, thereby negating the plaintiff's ability to plead that the amount of his damages was certain. All a plaintiff must do is merely allege that his damages are undisputed.

For instance, in *Safeway I*, the plaintiff's complaint stated a cause of action because she "aver[red] that liability for the accident is uncontested and that the damages are undisputed," even though she also asserted her insurance company had refused to pay her benefits. 990 So. 2d at 346, 352. The insurer succeeded in establishing the plaintiff's damages were uncertain not because of pleading deficiencies but by means of a *factual* attack on the court's subject matter jurisdiction. The insurer submitted an affidavit from an assistant claim manager in which he stated that the plaintiff's damages were "disputed" because the insurer had requested, but not received, certain medical records that would allow it to distinguish the plaintiff's injuries caused by the accident from preexisting conditions. *Id*. at 347–48. In *Andersen*, the court dismissed the plaintiff's UIM claims for lack of subject matter jurisdiction when the insurer submitted an affidavit in a factual attack stating the

plaintiff's damages were uncertain because it was awaiting the outcome of a cervical discectomy surgery. *Andersen*, 2014 WL 838811 at *2. The court based its decision to dismiss the case without prejudice on "the undisputed fluidity and still speculative nature of [the plaintiff's] medical damages . . . ." *Id*. at *3. In both of these cases, the plaintiff's damages were "uncertain" because the insurer produced facts showing they lacked specific medical records relevant to the plaintiff's damages. But as *Safeway I* shows, a plaintiff can withstand a facial challenge to subject matter jurisdiction as long as his complaint plausibly alleges his damages are certain, even if the plaintiff also pleads the insurer refused to pay those damages.[4] Therefore, Broadway's state claims for breach of contract and bad faith failure to pay UIM benefits that are ripe for adjudication.

However, the Court's finding that *Pontius* and *Safeway I* control in this case and require Broadway to state a claim for UIM benefits that is ripe in order for the Court to have subject matter jurisdiction remains significant. Questions of subject matter jurisdiction may be raised at any time during the pendency of the proceedings. *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861 (11th Cir. 1998) (quotation and citation omitted). Therefore, if there are facts that make Broadway's damages uncertain, such as incomplete medical records or untreated injuries, State Farm can and should bring such facts to the Court's attention by

---

[4] State Farm has a defense to Broadway's bad faith claim if State Farm's disagreement with Broadway over the extent of his damages is "a bona fide dispute on the issue of damages." *See LeFevre v. Westberry*, 590 So. 2d 154, 161 (Ala. 1991). But whether State Farm's dispute with Broadway is in good faith is a fact issue for summary judgment or trial. Instead, State Farm improperly infers from Broadway's statement in his complaint that there is a dispute about his damages that the dispute is "legitimate." (Doc. #4 at 5.) This is a fact issue and State Farm is not entitled to an assumption of legitimacy at the pleading stage.

means of a factual attack on subject matter jurisdiction.  But because Broadway's complaint on its face establishes jurisdiction over the case, State Farm's motion to dismiss Counts I and II of Broadway's complaint is DENIED.

## IV.  CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1.     Defendants' motions to dismiss (Docs. ##4, 5) Count III in Broadway's complaint are GRANTED and this count is DISMISSED WITH PREJUDICE.

2.     Broadway's motion to remand (Doc. #7) is DENIED.

3.     State Farm's motion to dismiss (Doc. #4) Counts I and II of Broadway's complaint is DENIED.

4.     State Farm's motion to strike (construing Doc. #13 as containing a motion to strike) is DENIED AS MOOT.

DONE this the 19th day of March, 2014.

                                    _____/s/___Mark E. Fuller_____
                                  UNITED STATES DISTRICT JUDGE

17